Good morning, Your Honors. Mark Greenberg for Petitioner Roosevelt Coleman. I would like to reserve a couple minutes for rebuttal. It was Judge Englund who entered the judgment behind the petition, right? Pardon? It was Judge Englund who requested? Yes. The name on the briefs might have been wrong. JUSTICE BREYER Oh, I'm sorry. I apologize if I made a mistake. I wanted to speak briefly to the issue of exhaustion to emphasize certain points and see if that is, in fact, a problem for the Court. The point is, is that the citation to the Swain case, which stands for the proposition that under California law, there cannot be a constructive intent, whether it's implied malice or natural and probable consequences, to establish a conspiracy to commit murder. It has to be an actual intent to kill. That's the mens rea for that crime. Now, the Swain case invokes for that error the Chapman standard of review, which would not be invoked if that were merely a State law error. And the fact of the matter is, the type of error where you're lightening the prosecution's burden of proof by misdefining an element or having the jury take a shortcut on the case is a Federal due process violation. It's a Federal due process violation that's always or almost always predicated on the definitions established by State law. Roberts. Let's assume you're right. Why don't you move to the merits? BREYER Okay. The merits of the issue depend on the fact that we have these special verdicts in this case in which the jury revealed or revealed the probability of what it actually did in this case. Now, the prosecution didn't have to accede to the special verdicts. The courts didn't have to provide the special verdicts. The prosecution didn't even have to plead 13 overt acts. Roberts. There are no special verdicts in your favor. It's an absence of a special verdict that you're talking about. BREYER Well, it's – it's – there are a series of – well, I'm basing the inferences on what happened with the special. Roberts. On an absence. Right. BREYER Well, the absence of special findings that were – that indicate a probability that the jury made an unconstitutional decision. I read again the California decision last night, and I can't see why this isn't simply resolved as a matter of State law. We have the State telling us precisely how this ought to be handled, and it seems to make sense. BREYER Well, because the answer is that the State has provided a procedure in this case, which it didn't have to provide, in which the jury revealed what it actually did or what it probably actually did. Roberts. See, that's the problem. You keep falling back on probably. And as the verdicts in your favor that you're relying on, you're asking us to make some assumptions and some inferences, and they tell us under State law that gets you nowhere. BREYER No, I am relying on the Federal principle that if the record shows a probability that the jury acted unconstitutionally, that can be a due process violation. It's usually invoked in an instructional context, but I don't see why it can't be invoked in this context, where we have a series of findings, an absence of findings, that raise a probability as to what the jury did. And that probability is that the jury did not find the mens rea that's required by California law. Alito Didn't the prosecutor try the case on the theory that – and sum up on the theory of conspiracy to kill Harris? BREYER Yes. Alito And the – it was 4, 5, 6, and 11 of the overt acts that the jury did not find proof beyond the receipt, right? BREYER Correct. Alito But they did find overt acts that it showed there was a conspiracy to go over and kill Harris that opened the door. For example, 7, Brown, Coleman, McKinney, and Proctor drove to the Harris home. Brown and – 8, Brown and Proctor brought the guns. 9, McKinney kicked open the door. 10, police department was yelled by someone. They didn't find 11, that Brown, Coleman, and McKinney entered the Harris home, but that's – one of the courts said that could be because they were in the conjunctive and maybe didn't think all of them entered. And then you have Brown and Proctor fired, and 13, Patricia Harris was killed. So isn't there enough in terms of overt acts for a conspiracy to kill Patricia Harris? BREYER Yeah. I mean, if I were claiming there was a lack of sufficiency of the evidence, that would be the answer to that question, that the jurors – that there was – there was – Kennedy And was your client not part of that conspiracy? What was his part in it? BREYER Well, that's the question as to whether the jury found that my client was part of the conspiracy to commit the Harrises, because the jurors did not find that there was a discussion about killing the Harrises, did not find there was any of the planning elements. Kennedy Well, see, we're right back to the point that the State makes, that there doesn't have to be an identified victim for there to have been a conspiracy to commit murder. Well, there has to be somebody, and then they point out these things morph. They launch a conspiracy to kill somebody, and they end up changing their mind or adding somebody, and that's all you need for the State crime. BREYER No. That may be as a matter of law, but this is a – that is a factual question. Kennedy It's a matter of State law, and they have told us that on this – on this  BREYER Well, the answer is the standard for determining multiple or single conspiracies in California is the exact same one as determining it under Federal law. Now, if you had a situation here where the – there were – were these crypts getting together to say, let's go out and kill a blood, you have the factual predicate for finding an overarching  So the problem that I have with this is that there's two ways to look at this. One is your way, and the other way is a very simple way. For example, 4 and 5, all four discussed getting revenge against Jamal and or Kerry Harris and kicking open the door of the Harris' home. What if the jurors said, no, we don't find that all four discussed it, we unanimously agree. Two discussed it or three discussed it, they still have to say all four discussed it is not proved beyond a reasonable doubt, which doesn't mean anything. And then 6, Brown, Coleman, and McKinney discussed yelling police for him. What if they said Brown and Coleman discussed it, but McKinney didn't discuss it? That doesn't help your case. And finally, 11, Brown, Coleman, and McKinney and Proctor entered the Harris' home. What if they said, you know, we're not so sure that McKinney entered or we're not sure that Coleman entered, then they can't find that's proved beyond a reasonable doubt. It still doesn't help you. No, if I – again, if I were taking the sufficiency of the evidence to establish a conspiracy to kill the Harris' and the murder to kill Patricia – of Patricia Harris, no, I wouldn't have an argument. There's sufficient evidence to establish that based on California law. What I am saying is, and I'm not saying that the record absolutely proves what I'm saying occurred here, but the record raises a probability that the jurors did not find. That's where I have problems. Didn't counsel at trial argue that he was – Coleman was drunk and, therefore, couldn't have performed the intent to commit murder? Yes. Right. And he got an intoxication. He got an intoxication. So that was all before the jury. Well, it was before the jury, but if it is a matter of law, the jurors are made to understand that they can find a conspiracy to kill the Potts brothers as carrying over constructive intent to a conspiracy to kill the Harris' and then, by a further – That's what I'm saying to you, is where do you find support that that's what the jury did? By the absence of the findings reflected – the prosecution gets to, if it wants to. It doesn't have to, when it alleges conspiracy, to give the jury a road map, to give everybody a road map of what its factual theory of the case is. And that's what they did here with 13 overt acts. But what – that's what I'm saying to you. It's not clear from the jury's failure to find proof beyond the reasonable doubt on 4, 5, 6, and 11 of the overt acts that it meant that those weren't committed by anybody. It just meant it wasn't committed by all the persons listed. No. As I say, I can't absolutely establish what it means. I can establish a probability as to what it means, but let's break it down. The jurors are presented with this evidence, mostly based on the testimony of Abdul Griffin. The allegations, the 13 overt acts, essentially map Abdul Griffin's testimony, except, of course, for the killing of Patricia Harris. Do you have any cases that say that we can find a constitutional violation where we're dealing with an unverifiable probability or possibility that there was a mistake? Well, yes, it's – it's Estelle versus – right now the name escapes me, the case. But, yes, it's – it's the – well, I'm not sure it's – it's the principle. It usually arises in instructional cases where you have an ambiguous instruction, for example. If there is a substantial likelihood that the jury applied that ambiguous instruction in an unconstitutional matter, you have an unconstitutional violation. But you have to start with an ambiguous instruction. Here I don't think there's a parallel. Well, in a way it is. I mean, you're – if – if you allow the jurors to make special findings for each overt act, which, as I say, under California law, you don't have to. You can be – you can have a general verdict of guilty or not guilty for conspiracy. If you're going to allege 13 overt acts, which you don't have to, you just need to allege one, and you don't even have to tell the jury they have to find that one. And this information establishes that kind of ambiguity in the verdict, which raises the substantial likelihood of an unconstitutional application of the law. It seems to me you can have a Federal constitutional violation. This is an unusual situation, as I say. You have an unusual adoptive admission point. Can you tell us a little bit about that? And I'd like to – was that specific point, that silence in the face of a harangue, can't qualify as an adoptive admission, was that particular issue addressed in the state court system? It was addressed. It was – yes, it was addressed on the appeal. And how was it – how was it decided? It was decided that – that that was an adoptive admission, that the silence that you could find within these harangues, factual statements that the defendant didn't respond to, that could be subject to the instruction on adoptive admission. So we've got a factual predicate for the – for the legal holding. What's the matter with the factual predicate? Well, I think – I think the factual predicate is – is actually wrong. When you have these – these – and they're quite common, especially with young offenders. When you have the detectives or the police giving these long, protracted speeches about what they should do and how much better it's going to be and – and we know what happened and your friends are selling you out, and the suspect is sitting there quietly with no specific question to answer and does answer when he's asked a specific question, that seems to me you're not dealing with a situation where you have adoptive admissions, especially where the suspect's been Mirandized and told that he has the right to remain silent. Well, but of course the predicate is that he waived it. What's your best case on this variant of adoptive admissions? It would just be – it would just be the logic of the situation in Doyle. But what came in that would actually be harmful as an adoptive admission? What did – it's not like the officer said, I know you did it and you intended to do it. Well, it gives the prosecution an argumentative advantage in – in allowing them to – to – it gives more authority to the prosecution's position. When you get an instruction that gives more authority to your position that A, B, or C is an adoptive admission rather than a suspect sitting there. But what was he admitting, assuming it was an adoptive admission, what was he admitting here that hurts your client's case, that renders this non-harmless, that renders this non-harmless? Well, it's not clear. It's not clear because it just – it just – it's not clear because the detective's speech was so rambling and so discursive. Well, doesn't that show that if it was an adoptive admission, it really didn't admit anything, and therefore if it's error, it's harmless error? Well, no, but the – the notion, the principle of adoptive admission is that the silence itself is somehow admitting something. So the officer says, we know how it happened, we just want to give you a chance. I think one of the things he says, we know how it happened, we just want to give you a chance to say your side of the story, and the – and your client doesn't say anything. Well, what does he really admit? Well, I don't think he really does admit anything, but the problem is, is that the – when the jury gets the instruction, they're allowed to interpret merely this sort of stunned silence. But the problem is, what does it do? How does it do it? Well, it tells the jury that his silence himself, the fact that he's not jumping out of his chair saying, pounding the table saying, I wasn't there, I didn't do it, is somehow incriminating evidence. Now, the prosecution can argue that, but to argue that with the advantage of an instruction tips the scale beyond what it should be. That – that would be the point. Well, it would only be constitutional error if it was a Doyle error, right? Correct. And isn't it a problem that he didn't say, look, I don't want to speak, you know, I've done, this is all I have to say, or, you know, I really want to – I want a lawyer now. He didn't – at the point that the alleged adoptive admissions were made, he hadn't asserted his Miranda rights that, okay, I want to stop or I want a lawyer, correct? That's correct. Had he done that, it clearly couldn't have been, you know, the meringue takes place and he says, look, I don't want to say anything anymore. Right. That would have clearly been a Doyle error. That would have been much clearer. Isn't that the real problem for this argument, that it's not a Doyle error because he had waived his right to remain silent? Well, no, I think the real problem is the giving of the instruction and the instruction having the effect of a Doyle error. Well, why isn't it harmless error? The State Court tells us Petitioner does not challenge any particular actions by the prosecutor, nor does he demonstrate any undue focus on or unfair use of his post-arrest silence during the trial. So, as Judge Moskowitz points out, you have the instruction that didn't seem to cause anything to happen that your side even argued was error. Well, the position on prejudice below and the position on prejudice here is that this was a factually difficult case, that there is substantial evidence in the record that could lead a jury to acquit my client of both the conspiracy and the murder, and that any procedure, any appropriate instruction that adds to the weight of the prosecution's case improperly is prejudicial because the facts of this case are simply insufficient in equilibrium. Unless we have any questions from Chief Judge Schroeder, we'll call on the other side. And we've asked you so many questions, we'll give you an opportunity to respond. Thank you. Morning, Your Honor. Steve Herndon for responding. The Court has made most of my points. The State has. Well, watch out. We're not making points. We're simply asking questions. The Court has raised concerns that I have mentioned in my briefs, and that is that the State court has defined State conspiracy law, and that the attempt to use the lack of findings as having some evidentiary value, it goes nowhere because it's subject to so many meanings. The only thing that I would add to discussion so far is to point out that he was also convicted, the same jury also convicted on count one, of expressly intending to kill, premeditatively and deliberatively, Mrs. Harris. And they also found that he was a principal, which means that he either committed the act or that he aided and abetted the act. And under the facts here, I believe it's the aid and abet theory that they had to apply because there was no evidence that he was the shooter. He was the driver? He was one of the drivers. However, he waved the gun earlier that was loaded. He was one of the drivers. On the way, they he offered to stop, or he did stop at a liquor store, but they were unsuccessful at picking anything up. He then parked the car on the Harris' street. He suggested that there be a drive-by shooting. The group apparently voted him down because they rushed to the house. And then there's some discrepancy about whether he actually stepped in the house, but two of the conspirators fired and Mrs. Harris was killed. So I believe that the prosecutor met his burden of showing that there was an actual intent to kill, especially by looking at the fact that the jury convicted him on count one. What about the adoptive admission argument? Well, it's not Doyle error because he waived his right to be silent. But I think the best evidence there is the tape and the transcript, which the court has before it. He makes the interviewer out to be a revivalist preacher who doesn't let him get a word in edgewise. But in fact, he was patient and low key. And at one point, he asked the question, and he kind of leans back in his chair and waits for a response. So I think there was enough evidence to support the giving of that instruction, leave it to the jury. If it didn't apply, if they thought the evidence didn't show an adoptive admission, the instruction told them to ignore it. Do you have anything else? Nope. Thank you, counsel. Do you have any reply to that, counsel? Briefly, as far as the verdict on count one for premeditated murder, that does not assuage the error if the court agrees that there's error, and the reason is that it becomes a regress, I guess, in this case, a progress. If constructive intent is used to find defendant guilty of conspiracy to murder the Harris's, then that constructive intent can then be extended one step further to find guilt for the murder, so that the error would require a reversal both of the conspiracy count and of the substantive murder count. With that, I'm prepared to submit the case. Thank you, counsel. Thank you both. It's an interesting case with interesting issues. Coleman versus Rowland is ordered submitted, as is Mariscal versus Terhune, the third case on our calendar.
judges: Schroeder, Trott, Moskowitz